## Lieberman v. McLaughlin.

(Decided March 4, 1930.)

JOSEPH SOLINGER and ALEX H. VEENEMAN for appellant.

FURLONG & WOODBURY and CHAS. L. SCALES for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Gertrude Lieberman suffered serious personal injury when she came into collision with an automobile driven by H. S. McLaughlin. She instituted an action against McLaughlin to recover damages on the ground that her

injury was the consequence of his carelessness in the operation of the car. The defendant denied the allegations of negligence on his part and pleaded contributory negligence on the part of the plaintiff. The jury found a verdict for the defendant and the plaintiff's motion for a new trial was overruled, resulting in this appeal. A reversal of the judgment is sought because the court erred: (1) In not taking judicial notice that the place where the accident happened was a closely built-up business section of the city where the speed of an automobile was limited to fifteen miles an hour; (2) in failing to submit to the jury the question whether it was necessary for the driver of the automobile to sound his horn; and (3) in failing to instruct the jury as requested regarding defendant's liability if he failed to embrace the last clear chance to avert the injury. The accident occurred at the intersection of Fourth and Chestnut streets in the city of Louisville. A traffic officer was stationed there to control movement of the traffic, and he operated the semaphore signals for that purpose. Plaintiff's case was predicated upon the position that she had a signal from the officer to proceed, and while doing so was run down by the automobile. The defense was that plaintiff proceeded against the semaphore signal and walked directly against the side of the automobile.

1. The court instructed the jury to the effect that defendant should have his automobile under reasonable control, operate it at a rate of speed that was reasonable and proper, having regard for the traffic conditions and the use of the highway at that time and place, and to keep a lookout ahead for persons or other vehicles in front of him or so near thereto as to be in danger of collision. He further told the jury that if the traffic semaphore light was in the "go" position for the north and south bound traffic then the driver had a right to proceed southwardly over the intersection; but if the light was in the "stop" position for north and south bound traffic, then it was his duty to bring the automobile to a stop. The court also told the jury that it was defendant's duty to exercise ordinary care generally to operate his automobile so as to avoid collision with persons and vehicles using the highway at the time and place. The court did not advise the jury that a speed in excess of fifteen miles per hour was prima facie evidence of negligence, or the circumstances under which the defendant should sound his horn. The statute provides (section 2739g-51) that

the rate of speed of an automobile must not be greater than is reasonable and proper, and where the highway passes through a closely built-up business section of any city a speed in excess of fifteen miles per hour constitutes prima facie evidence of unreasonable and improper driving. No testimony was produced as to whether the locality of the accident was a built-up portion of the city. The evidence in the case was closed before noon and the court took a recess. At the afternoon session the plaintiff was recalled and permitted to testify in rebuttal. She was then asked whether the section of the city in the neighborhood of Fourth and Chestnut streets, where the accident occurred, was a built-up business district. The court declined to receive the testimony. It does not appear whether the court acted upon the ground that the testimony was not proper in rebuttal, but should have been adduced in chief, or that it was unnecessary to prove a fact so notorious that notice thereof could be taken without proof. We consider the case upon the acceptance of the latter alternative. It is proper to instruct the jury, in a case where it is material, and the evidence warrants it that a speed in excess of fifteen miles per hour is prima facie evidence of unreasonable and improper driving. Kappa v. Brewer, 207 Ky. 61, 268 S. W. 831; Hornek Bros. v. Strubel, 212 Ky. 631, 279 S. W. 1087; Wight v. Rose, 209 Ky. 803, 273 S. W. 472. But where the issue between the parties was sharply drawn and the jury could not have been misled, the omission to give such an instruction is not a reversible error. Wight v. Rose, supra. The only testimony in this record referring to the speed of the car is that of the traffic officer and the defendant. The former testified that he heard a thump which caused him to look and the lady was then falling. The automobile was stopped within eight feet. The officer, who was only fifteen feet away, said it seemed to him as though the driver tried to stop quickly and his car slid a little bit sideways, and the plaintiff got too close to him. It is not shown how far sideways the car skidded. Asked as to the speed of the car prior to the collision with the pedestrian, the officer answered that it was pretty hard to estimate, but he imagined it was going about eighteen miles an hour. He further stated that he would not be sure about the speed, whether faster or slower than eighteen miles an hour. He did not know whether the car had four-wheel brakes or not, but in any event it stopped within a distance of eight feet. Cf.

Wener v. Pope, 209 Ky. 553, 273 S. W. 92. He further stated that the lady came in contact with the left rear fender of the car and that her head hit the handle of the door. Under such conditions it cannot be said that any error was committed in omitting the instruction, because the pedestrian came in collision with the side of the car, which made the matter of speed immaterial, since it was not a proximate cause of the injury. Knecht v. Buckshorn, 233 Ky. 329, 25 S. W. (2d) 727; Denunzio v. Donahue, 204 Ky. 705, 265 S. W. 299; Blackman v. Streicher, 205 Ky. 773, 266 S. W. 633. Moreover, the officer's estimate as to the speed of the car was impaired by the circumstances detailed by him. Wener v. Pope, 209 Ky. 553, 273 S. W. 92. The defendant's testimony that his car was not equipped with four-wheel brakes, and that the speed did not exceed twelve miles per hour, was not substantially contradicted, but rather corroborated by the circumstance that the car was stopped so quickly.

2. It is argued, however, that there was sufficient evidence to require the court to submit to the jury whether it was the duty of the driver under the circumstances to sound his horn. The statute does not require the sounding of the horn unless it is necessary. Section 2739g-28, Ky Stats. The circumstances may be such as to enable the court to say as a matter of law that the horn should be sounded (United Casket Co. v. Reeves, 206 Ky. 581, 267 S. W. 1108) or so equivocal as to require submission of the question to the jury (Newbold v. Bortzge, 209 Ky. 218, 272 S. W. 755; Nunnelley's Adm'r v. Muth, 195 Ky. 352, 242 S. W. 622, 27 A. L. R. 910). In this case no error was committed in that matter. It does not appear whether or not the horn was sounded. Plaintiff testified that she knew traffic was moving south on Fourth street and that she was walking towards it. She said she did so because she had the right of way. It was her duty, nevertheless, to exercise ordinary care for her own safety (Baldwin v. Maggard, 162 Ky. 424, 172 S. W. 674), and since she knew traffic was moving in that direction, as she admitted, no signal was necessary for her. The sole purpose of sounding the signal is to notify those unaware of the danger that a vehicle is approaching. Bruce Adm'x v. Callahan, 185 Ky. 1, 213 S. W. 557; Wells v. King, 219 Ky. 201, 292 S. W. 777. The fact that the traffic officer had permitted plaintiff to proceed did not excuse her from exercising the care exacted by the law for her own safety. Melville v. Rollwage, 171 Ky.

607, 188 S. W. 638, L. R. A. 1917B, 133; Baldwin v. Maggard, supra. The duty is reciprocal, and both the pedestrian and the driver of the car must obey the signals of the officer, and in addition to that, they must exercise ordinary care to avoid an accident. Wilder v. Cadle, 227 Ky. 486, 13 S. W. (2d) 497; Cumberland T. & T. Co. v. Yeiser, 141 Ky. 15, 131 S. W. 1049, 31 L. R. A. (N. S.) 1137; Bruce v. Callahan, 185 Ky. 1, 213 S. W. 557. The plaintiff testified that she stood on the corner waiting for the light to change so that she could cross Fourth street on the northerly side of Chestnut street. The north bound traffic had cleared, but the south bound traffic on Fourth street was still moving. The traffic officer raised his hand and turned and she started across the street. After she had gotten on the west street car track, she was knocked down by the automobile. The policeman attempted to put her on her feet and she could not stand. She was taken in the defendant's car to the city hospital. She did not see the car that struck her. She said when she reached the middle of Fourth street she did not stop, and was looking at the semaphore light as she proceeded. She did not know what part of the machine struck her, but a wheel went over her foot, which she assumed was the front wheel of the car. The traffic officer testified that he controlled the signals on the overhead semaphore. The system was to blow a whistle about fifteen seconds before turning the lights. At the moment of the accident the traffic was going north and south on Fourth street, but was heavier in the southerly direction. The traffic on Chestnut street on each side of Fourth street was waiting. He blew his whistle but still permitted the south traffic to continue and did not change the semaphore sign. Immediately after blowing the whistle he stuck his hand up and pulled the semaphore in position to stop south bound traffic on Fourth street. Defendant was then near the north line of the intersection, and suddenly put his brakes on when the lights changed. His car slid a little bit sideways. He did not see the lady until she was hit, but she came in contact with the left side of the car. Her head hit the door handle and the left rear fender struck her in the side. The defendant testified that he was driving south on Fourth street with his wife and little boy in the car. As they approached Chestnut street he was driving about twelve miles per hour and he had come within twenty or thirty feet of the intersection. The officer was in control of the traffic over the intersec-

tion. When about three car lengths from the north cross-over the officer blew his whistle. Immediately thereafter some lady left the curbing on the post office corner to cross Fourth street to the opposite corner. He was driving with extreme caution because several people were standing on the crosswalk between the north and south bound street car tracks. When he was very close to the crosswalk following another car, the officer indicated that he should increase his speed, but he did not do so. He was looking at the people standing in the middle of the street, watching them very closely to see that they did not get in danger from his car. When the front of the running board had passed the furthermost person standing in the street, he looked ahead to see whether the way was clear. The semaphore signal read "go" and the officer was motioning vigorously at him to proceed. He had moved a short distance when he felt a vibration, and heard a thud in the left rear part of the car. He immediately put on his brakes, stopped, got the lady in his car, and took her to the hospital. It will thus be seen that the effect of the evidence as a whole is that the lady came in contact with the side of the automobile. The court told the jury that it was the duty of the plaintiff not to attempt to cross Fourth street unless the semaphore signal was in a position of "stop" for north and south bound traffic on Fourth street, and that it was her duty to exercise ordinary care generally for her own safety, and if she failed to exercise such care, and but for such failure her injuries would not have occurred, they should find for the defendant. It is apparent from the summary of the evidence that the instructions, under the facts appearing, fairly submitted to the jury the relative duties of the parties. No basis was afforded by the evidence for any instruction respecting the duty of defendant as to sounding the horn of his automobile. It does not appear whether it was or was not sounded, but certainly no signal from south bound traffic was due plaintiff who was admittedly aware of its movement. West Ky. Coal Co. v. Kelley, 155 Ky. 552, 159 S. W. 1152; Carr v. Warford, 198 Ky. 690, 249 S. W. 1024.

3. It is finally insisted for the appellant that there should have been an instruction on defendant's liability under the doctrine of the last clear chance, which prevails in this state. Damon Peak v. Cary G. Arnett, 26 S. W. (2d) ——, this day decided. It is proper for the court to give an instruction in accordance with the doctrine of

the last clear chance if there is any evidence to authorize it. The accident in this case happened in one of two ways. Either the plaintiff walked against the defendant's automobile, which the driver could not have avoided, or the driver skidded his car against appellant by a sudden application of the brakes, when the light changed. Appellant's argument is that the driver of the automobile saw appellant leave the sidewalk and enter Fourth street on the cross-over. He testified that he saw a lady step off the curbing, but she was then in no danger, and did not get in front of the automobile. There were others nearer the path of his car. In cases of that character the doctrine of the last clear chance has no application. Blackman v. Streicher, 205 Ky. 773, 266 S. W. 633. In Metts v. Louisville Gas & Elec. Co., 222 Ky. 551, 1 S. W. (2d) 985, relied upon by appellant, it was held that when a driver observes persons in proximity to the path of his car who are evidently unaware of the car's approach, he should bring the car under reasonable control and exercise ordinary care to avoid injury. Cf. Myers v. Cassity, 209 Ky. 315, 272 S. W. 718. That rule would rarely apply at a street intersection where the traffic is being controlled by an officer, and where large numbers of people are constantly moving. It would be wholly impractical and unrelated to the realities to require that a driver proceeding in obedience to the signals should stop the moment a pedestrian stepped from the opposite curb, or observe his movements thereafter to the exclusion of all other duties. The traveler is bound to maintain a lookout and must follow the traffic officer's lawful directions. The last clear chance doctrine does not arise unless a clear opportunity is presented to prevent injury after the peril is discovered, or reasonably discoverable by the exercise of ordinary care. Ross v. L. T. & T. Co., 202 Ky. 828, 261 S. W. 590; Damon Peak v. Cary G. Arnett, 26 S. W. (2d) —, this day decided; Louisville Ry. Co. v. Broaddus, 180 Ky. 307, 202 S. W. 654. It does not appear in this case that the appellant was in any danger in advance of the impact with the automobile. Her peril was not discovered, and could not possibly have been discovered, in time to avoid it by any degree of diligence. L. & N. R. Co. v. Philpot's Adm'r, 215 Ky. 682, 286 S. W. 1078; Paducah Traction Co. v. Walker's Adm'r, 169 Ky. 721, 724, 185 S. W. 119; Warren v. Cumberland R. Co., 175 Ky. 92-95, 193 S. W. 1037.

The facts developed in this trial were few and relatively simple. The situation was not an unusual one. The instructions to the jury adequately and accurately submitted the disputed questions, and the evidence supports the verdict. In cases of such character we are not at liberty to interfere. Damon Peak v. Cary G. Arnett, 26 S. W. (2d) —, this day decided; Security Finance Co. v. Cook, 223 Ky. 124, 3 S. W. (2d) 187.

The judgment is affirmed.

Whole court sitting.